The next case today is United States v. Stephen Kuljko, Jr. Appeal Number 19-22-32. Attorney Palmer, please introduce yourself for the record and proceed with your argument. Thank you. John F. Palmer for Stephen Kuljko. I'd ask the court to reserve two minutes for rebuttal, if that's permissible. Yes. Thank you. Your Honor, I've raised on behalf of Mr. Kuljko three arguments laid out in the brief. One deals with the juror bias, a particular juror who we maintain should have been dismissed for cause. The second issue deals with the final argument of the prosecutor in rebuttal. And the third argument deals with the sentencing, both the procedural aspects of it and the substantive reasonableness of the sentence. I want to address the juror issue and the sentencing issue and reserve the third issue for my argument unless the court has questions about it. With respect to the implied bias argument, the situation with respect to, I think it was juror 31, arose on the first day of jury selection. The court had engaged in individual voir dire of the prospective jurors and had asked various questions. The relevant questions for this issue had to do with whether or not anyone close to you has ever been employed in law enforcement as a police officer or federal agent, as a prosecutor or as a correctional officer or in any other way. And the court also asked whether anybody close to you has ever had any dealings with the U.S. Attorney's Office or any agency of the United States Department of Justice. After the lunch break of the first day of jury selection, this juror 31 had been seated. She had not answered in a positive way to any of the questions. It was brought to the attention of the court and counsel that they had seen, I guess it was the U.S. Attorney or somebody had reported seeing... Mr. Palmer, I don't mean to be rude, but you have a very limited time and we understand what the issue is. What we have to get is why you think there's some error here. As I understand it, when this issue was first raised, that is when it was first brought to Judge Wolf's attention and the party's attention, that juror 31 worked with the wife of someone who worked in the U.S. Attorney's Office. Judge Wolf conducted an individual voir dire of the juror. She said, prospective juror at that point, she said that she thought that she could be fair, it wouldn't make any difference, and no one asked that she be dismissed for cause at that point. Is that correct? That is correct. Okay. And then you used your predecessor counsel, I don't know which it was, used the prompt to restrikes and no one struck this juror, so she sat on the jury. She was seated on the first day, correct? That's right. And then midway through the trial, or at some point during the trial, it then came to everybody's attention. Only one additional fact came to everyone's attention. That is that the AUSA, whose wife worked with juror 31, had sat in apparently as an observer when a witness statement was taken by the prosecutors from a witness in the case. Do I understand that correctly? Well, whether he sat in as an observer... Well, is there any evidence in the record that he participated actively in the taking of that statement? There's no indication that he didn't. No, no, no, but that's not the question I asked. This is your appeal, your burden. Is there any evidence that the individual whose wife worked with the juror ever participated actively in the taking of the statement? I think there's a reasonable inference. The prosecutor in the case that Coco was going to trial on was the one who said that he was the silent participant in that meeting because it was about... So what inference do you draw from silent participant? Well, the issue that was being interviewed, the witness was being interviewed about tax fraud. The prosecutor whose wife worked with the juror was the tax fraud prosecutor. So I don't know that it says in question and answer form that he was the participant, but there's a reasonable inference that he was the one asking the questions. It seems to me you could have cleared that up at the time if you posed that question to the U.S. attorney or asked Judge Wolf to do it. Well, the prosecutor in question was not available. No, no, but there was a prosecutor trying the case who could have gotten that information. I mean, Judge Wolf did ask the prosecutor several questions about the situation. What I don't understand is why the mere fact that the woman's husband attended the taking of the statement, why that changed the decisional calculus. You had the information about the relationship all along. You apparently didn't think there was any problem with it because you never asked Judge Wolf at the start of the trial during impanelment to remove the juror for cause. You never struck the juror. Then you get this one additional piece of information, which seems to me, frankly, to be rather benign. Suddenly, you say midway through the trial, well, now I have a basis for moving to dismiss the juror for cause, and I don't understand why this scrap of information changes the calculus. Well, it changed the calculus from the defense point of view because you had somebody during the voir dire after they'd seen Delano talking to the juror. All you had was information that this guy was somewhere in the office. By the way, this information was provided to us not that first day, but the second day of juror selection. It comes to the attention of the defense that not only is this guy somewhere in the office, he's actually part of the prosecution team in the case. But how does that affect his relationship with the juror? The facts on the ground as to the juror's relationship to this individual haven't changed. You didn't think those facts were sufficient to prompt a forecourse excusal. I'm just baffled by how you then think it suddenly, that calculus changes when nothing about the juror or her knowledge or her relationship has changed. It's the perception of bias on the part of the defense that you've got a prosecutor. Let's take the hypothetical that he was actually in the room prosecuting the case. You've got the perception of bias and unfairness on the part of a juror deciding your case when a juror actually knows and is friendly with a spouse who's part of the prosecution of the case. Now, to the point about should I have objected or should the defendant have objected that first day, sure. In an ideal world, we should have. Did the judge after the second day have the basis for an objection? Could the judge have taken the appropriate action after it was addressed the second day? Yes, he could have. The whole point of waiver or forfeiture that the government raises is really mooted by what the court did thereafter. The court had extensive further voir dire and said at some point, look, if all of this had been brought to my attention beforehand, I wouldn't have excused her for cause anyway. So the whole argument about forfeiture is really form over substance and the fact of the matter is that by the time this issue was presented fully to the judge, he had all the information he needed to make the decision. So I think your argument goes to the issue of forfeiture or waiver. It's not my argument. I'm just trying to get a handle on your thinking because I don't understand how Juror 31 could be regarded by the defense team as unbiased on day two and as biased later on when the fact that he attended the taking of a witness statement came up. Because it doesn't seem to affect Juror 31's involvement at all. That's all. I think what it did, your honor, quite frankly, is it sort of highlighted the problem. It could be that the defense was asleep at the switch, whatever the reason. I'm not going to suggest what the reason is. But my point on raising it thereafter was that you had this report, which by the way, the government knew of this meeting on July 24th. They didn't provide this report until August 6th, which is the second day of trial. So I think if we had had that report, we'd had that information, it might have been a little bit different that first day. Why don't you move on to your argument on the final rebuttal and just take a minute on that because we've held you quite a bit over. Okay, all right. Would you prefer to hear me on the rebuttal as opposed to the sentencing? I was going to address the sentencing. Oh, I thought you said you were going to rest on your brief on sentencing. Your choice. No, I was going to address orally if I could. This is a lengthy discussion, so I'll try to be brief. Counsel, we have your brief, so just make your main point. Okay, thank you, Your Honor. I wanted to say that first of all, you have the brief. The guideline sentence in this case was 87 to 108 months. The prosecutor recommended 121 months, and the court sentenced him to 156 months. You'll see in the transcript that the emphasis was on the inadequacy of the criminal history. Effectively, the court raised the criminal history four levels and sentenced him to 156. The record shows that the reasons that he expressed, which were fully discussed. It wasn't any question here that he was not putting on the record or clearly disagreeing with my defense arguments. I had asked for a less than guideline sentence. Our position is that the reasons he expressed were effectively covered by the guidelines. The length of the alleged fraud, the amount of the money involved. That's all reflected in the 16-point enhancement that the defendant received under the guidelines. The obstruction of justice, hiding the cars afterwards, same thing. The obstruction of justice translated to a two-point enhancement. The government argued that he didn't show remorse. Well, where somebody's in trial and stands by their Fifth Amendment privilege, that's not an appropriate consideration. It's not an appropriate consideration at sentencing that a defendant doesn't show remorse or contrition? Any case law for that? I understand he's got a Fifth Amendment privilege. We're not saying he has to admit his guilt, but I thought the case law is plentiful that remorse is always an appropriate consideration. Remorse or the lack of it. The guidelines reflect that in acceptance of responsibility. That's what the three points is for. You can't penalize somebody after they go to trial for not allocuting and showing remorse when they've got an appeal pending. That implicates your Fifth Amendment privilege. That's not the question I asked you. I didn't ask you about penalizing. I asked you if you had any case law that said that a sentencing judge cannot take into account when imposing sentence whether or not the defendant has expressed remorse. I think, well. I mean, that's a yes or no. There's either a case that holds that or else you're aware of no such case. Well, the way the court has posed the question makes it a little more complicated because you have to distinguish between a case where somebody goes to trial and is found guilty and then has an appeal and a case where somebody pleads guilty and is essentially accepting responsibility. So I will look for such a case, but I frankly think it's self-evident that where the guidelines provide for a benefit for showing remorse and accepting responsibility, you can't penalize somebody for not doing so after trial. Mr. Palmer, we're going to have to stop there. You have reserved some time for rebuttal. Thank you. Thank you, Your Honor. If you would mute your audio and video, we'll hear from Mr. Lockhart. Good afternoon, Your Honors, and may it please the court, Donald Lockhart for the government. I'd like to start with the Juror 31 issue and to drill down on this one additional piece that came to light concerning the fact that Mr. Dayano in AUSA and our office conducted a separate interview of government witness Linda Hackett concerning a separate IRS investigation. What the record shows is that the trial AUSAs, Mr. Balthazard and Wild, prepared Ms. Hackett for her trial testimony. Then Mr. Dayano interviewed her with an IRS agent concerning this distinct tax matter. The main point that we would make and that Judge Wolf made and that the defense attorney has yet to answer is how could that additional fact have been of any conceivable relevance to the credibility or impartiality of Juror 31 if she were unaware of Mr. Dayano's behind-the-scene involvement intersecting with the trial AUSA? There has never been, whether in the district court or on appeal, any articulation of how that connection between Mr. Dayano and the trial prosecutors could have possibly influenced Juror 31 if she were unaware of that behind-the-scenes interaction. There is nothing in the record to suggest that she was aware of it. This is why Judge Wolf asked the defense, what has changed since voir dire? At voir dire, what we know is that Juror 31 worked with a woman who was the wife of Mr. Dayano. We know that they had a very limited relationship. She had met him only about five times. She had never had a conversation with him. She didn't even know his last name. She never spoke with her colleague, Mr. Dayano's wife, concerning what Mr. Dayano did in the office. The only connection relevant to the case was that they briefly saw each other in the cafeteria just before trial and Mr. Dayano briefly said hi. Under those circumstances, the district court, even putting aside our waiver and forfeiture arguments that we make in the brief, plainly had the ability under an abuse of discretion standard to conclude that Juror 31, under those circumstances, was credible when she said not once but twice that she could be impartial, notwithstanding the fact that she worked with the wife of Mr. Dayano. There was a claim made, I think at the outset of argument and to some extent in the brief, that in failing to respond to the judge's initial question of the prospective jurors concerning whether they were new or were close to anyone in law enforcement, that her silence, Juror 31's silence, in response to that question, indicated a lack of candor. As Juror 31 later showed in her under-questioning by Judge Wolf, the fact is she was not close to Mr. Dayano and the judge could supportably have concluded that that was the case. Now, I did want to make one small record point on the issue of Juror 31. The other thing you may want to note is that later on at trial, the defense itself had that interview report marked as an exhibit. It was Exhibit G1. The record for that is in our brief. There is no record concerning G1 itself. If you say an exhibit, you mean not an exhibit that would go to the jury? An exhibit for identification? It will tell you a smidgen more than the current record reveals concerning that matter. Our main point is that it's irrelevant to the question of whether Juror 31 was partial or impartial. That's the main point. If the court has no further questions about the Juror 31 issue, I'll just briefly touch on the sentencing issue. The defense attorney has today focused on the double-counting argument. The main point in our brief is many of the facts that undergird enhancements are also quite plainly relevant to the 3553 analysis. Some of these facts, in particular, were present to an unusual degree that went beyond what was necessary for the enhancements. Take, for example, the victim enhancement. Here, we needed to have only five victims who had suffered substantial financial hardship. We showed that there were over 40 victims, 12 of whom spoke in graphic detail about the financial and psychological harm wrought by this defendant on their lives. We had far more facts than were even necessary for that type of enhancement, and the judge appropriately considered those facts in its 3553 analysis. Likewise, as to the duration of the crime, the defense says the duration of the crime, which Judge Wolf focused on 12 years in the making, was redundant somehow of the loss figure because the loss was explained in part by the duration of the scheme. Putting aside the fact that there isn't a direct correlation between those two things, the fact of the matter is that the duration of the scheme was obviously a very salient point in Judge Wolf's 3553 analysis. The fact that this defendant pursued a scheme against victims, several of whom were vulnerable for a 12-year period, was obviously a key integer supporting the judge's upward variant sentence. If there are no questions about the sentencing issue or no questions about any of the other issues, we're happy to rest on the brief. Thank you. Mr. Palmer, you have rebuttal. I have only one comment, Your Honor, and that is, and I stand corrected if I've misstated the record, but it's my recollection that the report of the interview was provided the second day of jury selection, and I'll go back and look at the record to see if I'm wrong, but it certainly wasn't available when we were questioning that juror the first day. If the court would accept a letter from me on that point, whether you think it's significant or not, my recollection is that we got the reports the second day of jury selection. That would be fine. Thank you. Thank you, counsel. That concludes argument in this case. Attorney Palmer and Attorney Lockhart, you should disconnect from the hearing at this time.